(No. 62093.—

RUSSELL G. SCHLENZ *et al.*, Appellants, v. JOHN W. CASTLE, Director of Local Government Affairs, *et al.*, Appellees.

*Opinion filed November 20, 1986.—Rehearing denied January 30, 1987.*

136

CLARK, C.J., took no part.

Paul E. Hamer, of Northbrook, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee John W. Castle.

Fred L. Foreman, State's Attorney, of Waukegan (James C. Bakk, Assistant State's Attorney, of counsel), for appellees Lake County Board of Review and Robert Jasper.

Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellees Township Assessors of Lake County.

JUSTICE SIMON delivered the opinion of the court:

In 1978 a complaint was filed in the circuit court of Lake County on behalf of Russell and Nancy Schlenz, as representatives of a putative class of taxpayers, attacking the practices of various State and local officials responsible for the assessment and equalization of property

pursuant to the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 482 *et seq.*). Named as defendants were the Director of the Illinois Department of Local Government Affairs (whose functions have since been transferred to the Director of Revenue) (the Director), the supervisor of assessments of Lake County, the Lake County board of review, and certain Lake County assessors. The case has been before this court on a prior occasion involving two questions which are not at issue here. *Schlenz v. Castle* (1981), 84 Ill. 2d 196 (*Schlenz I*).

The full procedural history of this action is detailed in the appellate court opinion (132 Ill. App. 3d 993), and we need not repeat it here. After this court held in *Schlenz I* that section 318.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 799.1) was not an unconstitutional attempt to validate a void tax and that class certification was properly denied, the cause was remanded for determination of whether a subclass existed. On remand, the defendants moved to dismiss the individual claims of Russell and Nancy Schlenz for failure to exhaust their administrative remedies. Plaintiffs' counsel responded with a motion to substitute the Lake County Taxpayers' Association, Frank Rice, Stephen Rudisill and Donald C. Johnson as plaintiffs. The circuit judge eventually dismissed all the plaintiffs, with the apparent exception of the Lake County Taxpayers' Association. The appellate court affirmed, holding *inter alia* that the Schlenzes and Johnson had failed to exhaust administrative remedies and that Johnson, Rice and Rudisill had no standing. (132 Ill. App. 3d 993.) We allowed the plaintiffs' petition for leave to appeal (103 Ill. 2d R. 315).

This action represents the latest salvo in a war which plaintiffs' counsel, Paul Hamer, has waged against revenue officials in this State over more than two decades. (See *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 203-04 (circuit court found that the ''real party in interest, the real

instigator of the lawsuit, is Mr. Hamer"); 132 Ill. App. 3d 993, 1016 (plaintiffs' counsel alleged that "this litigation" has been going on for more than 22 years); see, *e.g., Hamer v. Dixon* (1978), 61 Ill. App. 3d 30; *Hamer v. Kirk* (1978), 57 Ill. App. 3d 335; *Hamer v. Kirk* (1976), 65 Ill. 2d 211; *Hamer v. Kirk* (1976), 64 Ill. 2d 434; *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400; *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51; *Hamer v. Mahin* (1970), 47 Ill. 2d 252; *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360.) The battleground has not been limited to our State courts. See *Coleman v. McLaren* (N.D. Ill. 1985), 631 F. Supp. 749 (plaintiffs, including Hamer and his wife, had State remedies which precluded Federal injunctive relief); *Coleman v. McLaren* (N.D. Ill. 1986), 631 F. Supp. 763 (Hamers and their attorneys jointly and severally liable for attorney fees of Lake County State's Attorney for pursuing frivolous claim); *Hamer v. Anderson* (N.D. Ill. 1984), 594 F. Supp. 561.

The question in this case is whether the plaintiffs may properly maintain an action for the injunctive and declaratory relief sought in the complaint. The primary difficulty in resolving this issue is that it is by no means evident from the face of the complaint just what irregularities are alleged and what relief is being sought. The complaint, together with its "supplement," amendment, and 16 miscellaneous exhibits, covers some 128 pages of the common law record. The allegations attack everything from the Director's use of the categories "urban" and "rural" instead of "lots" and "lands" in sales ratio studies to the Department's failure to order reassessments and the fact that instructions given by the Lake County supervisor of assessments to township assessors at a meeting on December 28, 1976 "were not in writing *** [and] were not available to the public." There are few, if any, understandable allegations as to how the defaults of the various officials harm the plaintiffs; those

that apparently exist are secreted within long paragraphs replete with other claims. All of the substantive assertions by the plaintiffs are contained in a single count of the complaint and its amendments.

By way of relief the complaint proposes some three dozen declaratory judgments and a like number of injunctions, which appear to be comprehended by the generalized request for "a judgment declaring that the procedure outlined hereinabove [*i.e.*, in the complaint] relative to the assessment and equalization of all taxable property in the State of Illinois, shall be applicable" and the further plea for "a judgment declaring that all of the defendants shall comply with the applicable provisions of the Revenue Act." The prayer for relief also includes the demand for "a judgment declaring that copies of all correspondence, reports, memorandums, written or typed, by any of the defendants herein, in connection with the implementation of any judgment order issued by the court shall be sent to counsel of record for any person, firm, governmental entity or corporation made a party to this suit and that all parties hereto shall have access to any and all data used in connection with the implementation of any judgment order issued by this court at all reasonable times and upon written or reasonable oral notice to any other party." In essence, since plaintiffs have launched a system-wide assault on the assessment and equalization of real property, plaintiffs in this latter request are apparently asserting the right to oversee and second-guess each government official in the performance of his duties.

In short, the complaint is prolix, confusing and—in many respects—unintelligible. It has allowed this case, already eight years in litigation, to become a modern-day *Jarndyce v. Jarndyce*, enshrouding our courts of equity in a Dickensian fog. Many of the orders and injunctions sought exceed the competence of the judicial branch of

government (*cf. People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 368), or would be so vague as to be without meaning. The defendants have never argued the legal insufficiency of the complaint, however, and we will not decide it *sua sponte.*

According to the plaintiffs, the gist of the complaint is that property belonging to persons other than the plaintiffs has either been underassessed or improperly exempted from taxation. As a result, the plaintiffs say they bear "an unfair share of the tax burden." As we understand it, the plaintiffs are contending that the tax burden falls disproportionately on them even if their own assessments are correct. They apparently argue that the systematic underassessment of certain types of property and the exemption of other properties from taxation results in the imposition of higher tax rates and that, as a consequence, the plaintiffs pay more taxes than if all property was correctly assessed. *Cf. In re Application of Rosewell* (1985), 106 Ill. 2d 311, 319-20.

With respect to the alleged patterns of underassessment, the defendants respond that an adequate legal remedy exists, thereby precluding the declaratory and injunctive relief sought by the plaintiffs. "In the field of taxation the general rule applies that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists." (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105.) Moreover, in tax cases, "relief should not be afforded by way of declaratory judgment in cases which would not have merited relief by way of injunction." (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 322; *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 369.) The only exceptions to the bar against equitable or declaratory relief where an adequate legal remedy exists are complaints that the tax is unauthorized by law or is on exempt property. *First National Bank & Trust Co. v. Rosewell* (1982), 93

Ill. 2d 388, 392.

A comprehensive set of administrative and legal remedies is afforded under the Revenue Act of 1939 to those aggrieved by the assessment of their property. In counties other than Cook, the taxpayer must first present his complaint to the county board of review. (Ill. Rev. Stat. 1985, ch. 120, par. 589; *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477; *cf. People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443.) The taxpayer may then select one of two mutually exclusive (Ill. Rev. Stat. 1985, ch. 120, par. 592.1) routes of challenging the board's decision. First, he may appeal to the Property Tax Appeal Board, whose decision is further reviewable in the courts under the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). (Ill. Rev. Stat. 1985, ch. 120, pars. 590.1, 592.4.) Such an appeal does not delay the extension of taxes on the assessment, but if the appellant prevails he is entitled to an abatement or refund. (Ill. Rev. Stat. 1985, ch. 120, par. 592.4.) In the alternative, the taxpayer can pay his taxes under protest and file objections to the collector's application for judgment in the circuit court. Ill. Rev. Stat. 1985, ch. 120, pars. 675, 716.

Those defendants who are county officials maintain that the tax-objection proceeding "provides an adequate remedy at law wherein the alleged irregularities" (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324) in assessment may be litigated. Defendants point to this court's decision in *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, as establishing that the underassessment of other property is cognizable in a tax-objection case and that the relief available is a refund of the amount that the objecting taxpayer would not have paid had the other property been correctly assessed. See also *In re Application of Rosewell* (1985), 106 Ill. 2d 311 (taxpayer raised system-

atic undervaluation of other property in tax-objection proceeding; this court denied relief because of inadequate proof that other property was undervalued).

The plaintiffs reply that the legal remedy is inadequate because the courts have refused the attempts of unspecified "taxpayers" to join, as parties in their tax-objection cases, the officials responsible for the alleged patterns of underassessment. This argument suggests that the plaintiffs seek not the reduction of their own tax burdens to the proper level, but the increased valuation of other property. What plaintiffs fail to face is that their only stake in the underassessment of other types of property is its effect on their taxes; their inability to force the assessment officials to increase other assessments does not render the tax-objection proceeding an inadequate remedy. They have not demonstrated the inadequacy of the legal remedy; moreover, the exceptions previously noted for taxes unauthorized by law and on exempt property obviously do not apply (see *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324). Plaintiffs are therefore barred from seeking injunctive or declaratory relief against the alleged patterns of underassessment.

In addition to the attacks on the underassessment of property belonging to others, the complaint, according to the plaintiffs' brief, "challenged certain specific tax exempt properties in Lake County." The plaintiffs' "amendments" to the first amended complaint allege generally that the Department and the board of review have granted tax exemptions covering properties which are not used exclusively for tax-exempt purposes. Included are charges that "parsonages in West Deerfield, Libertyville, Deerfield, Vernon and Fremont Townships are tax exempt, a church in Fremont leases its property to private organizations, *** a boy's camp is exempt, [and] property owned by an organization known as

'Nature Conservatory' in Vernon Township is exempt." Plaintiffs contend that they have no administrative or legal remedy with respect to tax-exempt properties and are therefore entitled to seek an injunction directing the defendants to restore to the tax rolls all property which has been improperly exempted.

The allegations in this section of the complaint are obviously deficient. No adequate description of any exempt property is provided, and the relief requested is so vague as to be meaningless. In addition, the plaintiffs' interest in the taxation of any parcel of exempt property is extremely remote. We agree with the defendants that a private citizen has no authority to bring a suit for the collection of taxes (*People ex rel. Morse v. Chambliss* (1948), 399 Ill. 151), and that plaintiffs' attempt to force the return of property they believe has been improperly exempted to the tax rolls is such a suit (*Hoffman v. Northwestern University* (1976), 40 Ill. App. 3d 1012). Permitting citizens such as the plaintiffs to litigate the exemption status of their neighbors would turn them into *de facto* special assistant State's Attorneys and would lead to chaos and confusion.

*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, does not require a different result. In *McKenzie*, the court only held that a taxpayer who alleges that his tax burden is increased by an exemption statute may challenge the facial validity of that statute. Although the single allegation of plaintiffs' complaint concerning exemptions does refer to the constitutionality of two of the exemption statutes, we agree with the Director that the thrust of the allegation is not to attack the statutes but rather the propriety of exempting specified parcels. Notably, that is how the allegation is summarized in the plaintiffs' brief.

The plaintiffs also maintain that another facial challenge to the validity of a statute allows them to proceed. They cite a paragraph of the complaint charging that

Public Act 80—247 is unconstitutional. This court upheld the constitutionality of Public Act 80—247 in *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260. In any case, the allegation has been mooted because the provisions of Public Act 80—247 have been substantially revised by amendments enacted since the complaint was filed. (See 1981 Ill. Laws 853-58; Ill. Rev. Stat. 1985, ch. 120, par. 501e.) Finally, the contention that grants-in-aid are affected by inequalities in assessment is also insufficient to impart standing to proceed with this action. The appellate court correctly held that this issue was waived by the failure of the plaintiffs to rely on it in that court.

We have considered the plaintiffs' other arguments and find that each is either unnecessary to the decision of this case or is patently without merit. The circuit and appellate courts were correct in dismissing the action as to the Schlenzes, Rice, Rudisill, and Johnson. The record does not reflect whether the Lake County Taxpayers' Association has been dismissed from the cause; but clearly the taxpayers' association could have no greater right to proceed than the individual plaintiffs, and it too must be dismissed.

For the reasons stated, the judgments of the circuit and appellate courts are affirmed. In the exercise of our supervisory authority, we remand the cause to the circuit court of Lake County with directions that the complaint be dismissed as to the Lake County Taxpayers' Association as well.

*Judgments affirmed;*
*cause remanded,*
*with directions.*

CHIEF JUSTICE CLARK took no part in the consideration or decision of this case.